IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD A. TERRELL,           *
                          *
    Plaintiff,            *
                          *
v.                      *    CIVIL ACTION NO.
                          *
PROMETHEUS FRANCHISE RESTAURANT*
HOLDINGS, LLC, PROMETHEUS     *
RESTAURANT OFFICE, LLC,       *
SOUTHEAST QSR HOLDINGS, LLC,  *
and SOUTHEAST QSR, LLC,       *
                          *    **JURY TRIAL DEMAND**
    Defendants.          *

**COMPLAINT**

Comes Now, Plaintiff, Richard A. Terrell, and files his Complaint against the above-named Defendants on the following grounds:

**INTRODUCTION**

1.

This is an action for violations of the Family Medical Leave Act ("FMLA"), codified at 29 U.S.C. § 2601 et seq. This is also an action for violations of the Americans with Disabilities Act ("ADAAA") codified at 42 U.S.C. § 12101 et seq., as amended by the Civil Rights Act of 1991 and the ADA Amendment Acts of 2008.

**JURISDICTION**

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.

Defendants are an "employer" as defined by 29 U.S.C. § 2611(4).

4.

Defendants are an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 12111(5)(A).

5.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

6.

Defendant Prometheus Franchise Restaurant Holdings, LLC ("PFRH") is a for-profit Delaware limited liability company doing business in the Atlanta Division of the Northern District of the State of Georgia.

7.

Defendant PFRH's executives, Nicholas Peters and Chris Suh, operate PFRH business within the Atlanta Division of the Northern District of the State of Georgia.

8.

This Court has personal jurisdiction over Defendant PFRH.

9.

Defendant Prometheus Restaurant Office, LLC ("PRO") is a for-profit Delaware limited liability company doing business in the Atlanta Division of the Northern District of the State of Georgia.

10.

Defendant PRO's executives, Nicholas Peters and Chris Suh, operate PRO business within the Atlanta Division of the Northern District of the State of Georgia.

11.

This Court has personal jurisdiction over Defendant PRO.

12.

Defendant Southeast QSR Holdings, LLC ("SQH") is a for-profit Delaware limited liability company doing business in the Atlanta Division of the Northern District of the State of Georgia.

13.

Defendant SQH's registered agent, C.T. Corporation System, and its registered address, 289 S. Culver Street, Gwinnett County, Lawrenceville, Georgia 30046-4805, is located within the Atlanta Division of the Northern District of the State of Georgia.

14.

This Court has personal jurisdiction over Defendant SQH.

15.

Defendant Southeast QSR, LLC ("SQ") is a for-profit Delaware limited liability company doing business in the Atlanta Division of the Northern District of the State of Georgia.

16.

Defendant SQ's registered agent, C.T. Corporation System, and its registered address, 289 S. Culver Street, Gwinnett County, Lawrenceville, Georgia 30046-4805, is located within the Atlanta Division of the Northern District of the State of Georgia.

17.

This Court has personal jurisdiction over Defendant SQ.

**VENUE**

18.

Defendants operates their restaurant and restaurant property business within the Atlanta Division of the Northern District of Georgia.

19.

The actions by Defendants alleged herein occurred within the Northern District of Georgia.

-4-

20.

Venue in this district is proper for Defendants pursuant to 28 U.S.C. § 1391(b) & (c) and 29 U.S.C. § 2617(a)(2).

**THE PARTIES**

21.

The Plaintiff is a former employee of Defendants, who resides in Forsyth County, Georgia.

22.

Defendants are all Delaware limited liability companies doing business in the State of Georgia.

23.

Defendant PFRH has failed to register its business with the Georgia Secretary of State's Office, and, therefore, does not have a registered agent for service of process in the State of Georgia.

24.

Defendant PFRH may be served with summons and process pursuant to Rule 4(h)(1) and 4(e)(1) of the Federal Rules of Civil Procedure and O.C.G.A. §14-2-1510(b) by delivering a copy of the summons and complaint by overnight delivery to Nicholas Peters or Chris Suh at 520 D Street, Suite C, Clearwater, Florida 33756 and upon the Georgia Secretary of State.

25.

Defendant PRO has failed to register its business with the Georgia Secretary of State's Office, and, therefore, does not have a registered agent for service of process in the State of Georgia.

26.

Defendant PRO may be served with summons and process pursuant to Rule 4(h)(1) and 4(e)(1) of the Federal Rules of Civil Procedure and O.C.G.A. §14-2-1510(b) by delivering a copy of the summons and complaint by overnight delivery to Nicholas Peters or Chris Suh at 520 D Street, Suite C, Clearwater, Florida 33756 and upon the Georgia Secretary of State.

27.

Defendant SQH is a Delaware limited liability company registered to do business in the State of Georgia.

28.

Defendant SQH may be served with summons and process by service upon its registered C.T. Corporation System, at its registered address at 289 S. Culver Street, Gwinnett County, Lawrenceville, Georgia 30046-4805.

29.

Defendant SQ is a Delaware limited liability company registered to do business in the State of Georgia.

30.

Defendant SQ may be served with summons and process by service upon its registered C.T. Corporation System, at its registered address at 289 S. Culver Street, Gwinnett County, Lawrenceville, Georgia 30046-4805.

**FACTS**

31.

Defendants operate their franchise restaurant businesses and properties in the United States of America, including the State of Georgia.

32.

Nicholas Peters is the President, Chief Executive Officer or other executive capacity for all Defendants with the same business address at 520 D Street, Suite C, Clearwater, Florida 33756.

33.

Chris Suh is the President, Vice President or other executive capacity for all Defendants with the same business address at 520 D Street, Suite C, Clearwater, Florida 33756.

34.

On or about November 1, 2019, the Plaintiff was hired by Defendants as a pilot, in which he flew executives out of Georgia and Florida.

35.

As a pilot, the Plaintiff flew Chris Suh and other executives on behalf of all Defendants so that the executives could perform their duties in overseeing restaurant operations and properties owned by Defendants.

36.

Defendants are centrally controlled by common management from the same offices, including the collective control, oversight, and direction of the operations.

37.

Defendant PFRH is the parent company of SQH, which is the parent company of SQ.

38.

Defendant PRO owns and procures the properties for Defendants' restaurants.

39.

Defendants have common ownership and financial control.

40.

Defendants' day-to-day operations are interrelated in the operation of their restaurants and properties.

41.

Defendants collectively controlled, oversaw, and directed the day-to-day operation, including the duties performed by the Plaintiff in flying for the operations of all Defendants.

42.

On October 19, 2021, while at the Tampa airport, the Plaintiff became nauseated and disoriented.

43.

On October 19, 2021, the Plaintiff began to feel worse and contacted Jonathan Mitchell and informed him he was too sick to fly.

44.

On October 19, 2021, Mitchell contacted Emergency Medical Services ("EMS"), and the Plaintiff was taken in an ambulance to St. Joseph's Hospital in Tampa.

45.

From October 19, 2021 to October 21, 2021, the Plaintiff remained hospitalized for testing for a stroke and heart attack, including bloodwork, MRI, CAT scan, and an EKG.

46.

On October 21, 2021, the Plaintiff was released from the hospital and instructed to see an Ear, Nose and Throat ("ENT") specialist.

47.

On October 22, 2021, Tracy Gillette, Human Resources Director, called the Plaintiff and told him that she was putting him on FMLA, and she would be sending him FMLA forms.

48.

On October 25, 2021, the Plaintiff was examined by Dr. Vikas P. Singh, an ENT Specialist, who concluded that the Plaintiff suffered from vestibular neuronitis.

49.

Vestibular neuronitis is a disorder that is characterized as a severe sudden attack of vertigo.

50.

Vestibular neuronitis is a serious health condition under the FMLA.

51.

Vestibular neuronitis is a disability under the ADAAA.

52.

On October 25, 2021, after Dr. Singh examined the Plaintiff, he issued the Plaintiff a "return to work at full capacity" authorization effective November 1, 2021.

53.

On October 25, 2021, the Plaintiff requested leave until November 1, 2001, as a reasonable accommodation by sending Dr. Singh's release to work to Gillette, Suh, and Kyle Heckrodt – Chief Pilot.

54.

On October 27, 2021, Heckrodt rejected Dr. Singh's release to work for the Plaintiff, stating in his email:

> Since your first class medical was issued, you had a serious medical incident at the FBO where your coworkers found you in the restroom in such a state of distress that an ambulance had to be called and you had to be hospitalized. We obviously do not have the records from your hospital stay, but a general "return to work" note from a doctor that is not an AME is insufficient to return to duty as a pilot responsible for a multi-million dollar aircraft and the lives of SEQSR's team members. As you know, SEQSR goes above and beyond when it comes to aviation safety.
>
> The earlier email you provided was from an office manager and specifically stated that the AME had NOT at that time received any of the medical records relating to the incident in question. That obviously means that the doctor did not review those records and has not "issue[d] a medical" based on the information contained therein. Accordingly, SEQSR is not comfortable with you piloting the aircraft at this time. They specifically have

requested that an AME review your medical records and, have the AME repeat the first class exam in order for you to resume your duties as a pilot.

55.

On November 1, 2021, the Plaintiff was seen by Dr. Thomas Faulkner, an AME.

56.

On November 1, 2021, Dr. Faulkner evaluated the Plaintiff and reviewed the Plaintiff's medical records.

57.

On November 2, 2021, the Plaintiff provided Gillette, Heckrodt, and Suh a "Medical Certificate First Class" signed by Dr. Faulkner stating that the Plaintiff "has met the medical standards prescribed in part 67, Federal Aviation Regulations, for this class of Medical Certificate."

58.

On November 2, 2021, the Plaintiff confirmed with Gillette that Dr. Faulkner's office had sent the completed FMLA certification, which was also the Plaintiff's request for leave as a reasonable accommodation under the ADAAA.

59.

On November 3, 2021, Gillette confirmed she had received Dr.
Faulkner's completed FMLA medical certification stating the
Plaintiff should be out of work for twenty-one (21) days with a
return date of November 9, 2021.

60.

Specifically, on November 3, 2021, Gillette emailed the
Plaintiff stating:

I'm so glad you're feeling better!  Your doctor emailed
the completed medical certification that I sent to you and it
states you should be out of work for 21 days, which is
November 8.  You will revert back to an active pay status
after November 8 and once you are back on flight rotation.
You will need to work with Kyle to ensure he has everything
he needs to add you back the schedule.  Please let me know
when you confirm your next scheduled flight.

Thanks so much!

Tracy

61.

On November 3, 2021, the Plaintiff emailed Heckrodt, stating:

Tracey Gillette tells me I'm back on the clock 11/8, and
I should check with you to see if you need anything else from
me prior to then?

Richard Terrell

62.

On November 3, 2021, Heckrodt emailed the Plaintiff back,
stating:

Don't believe so.

But I'll double check.

63.

From November 3, 2021 through November 18, 2021, Defendants did not restore the Plaintiff to employment.

64.

On November 18, 2021, Jon Shepherd, Chief Legal Officer, called the Plaintiff and told him he was being terminated for hard landings.

65.

On or about November 18, 2021, Defendants issued the Plaintiff a "State of Georgia Department of Labor Separation Notice" stating that the reason for separation was "Violation of company policy Tried to return to work without proper medical authorization in violation of the company's safety first policy regarding aircraft safety."

66.

Defendants' contradictory reasons for terminating the Plaintiff for alleged hard landings and alleged violations of company policy are false and pretextual.

67.

Defendants did not provide the Plaintiff with written notice and a reasonable opportunity to cure any deficiency in his FMLA certification.

68.

Defendants violated the FMLA by failing to give proper notice to the Plaintiff of his FMLA rights and eligibility.

69.

Defendants violated the FMLA by failing to provide the Plaintiff with written notice and a reasonable opportunity to cure any deficiency in his FMLA certification.

70.

Defendants violated the FMLA by delaying and/or failing to restore the Plaintiff's employment.

71.

Defendants violated the FMLA by interfering with the Plaintiff's substantive rights to which he is entitled under the FMLA by failing to return him to an equivalent position.

72.

Defendants engaged in illegal retaliation against the Plaintiff because the Plaintiff exercised his rights under the FMLA.

73.

Defendants discriminated against the Plaintiff in close proximity after learning of the Plaintiff's disability, in violation of the ADAAA.

74.

Defendants discriminated against the Plaintiff in close proximity after learning of the Plaintiff's record of a physical impairment.

75.

Defendants discriminated against the Plaintiff in close proximity because they regarded and/or perceived the Plaintiff as having a physical impairment.

76.

Defendants have engaged in unlawful discrimination in violation of the ADAAA.

77.

Defendants terminated the Plaintiff in retaliation for exercising his rights by requesting and/or taking leave as a reasonable accommodation, in violation of the ADAAA.

**COUNT ONE:   FMLA VIOLATION**

78.

Plaintiff incorporates herein paragraphs 1 through 77 of his Complaint.

79.

The Plaintiff's vestibular neuronitis disorder is a serious health condition under the FMLA.

80.

The Plaintiff is an "eligible employee" as defined by 29 U.S.C. § 2611(2)(A).

81.

Defendants violated the FMLA by failing to give proper notice to the Plaintiff of his FMLA rights and eligibility.

82.

Defendants violated the FMLA by failing to provide the Plaintiff written notice of any certification deficiencies, and/or failed to provide the Plaintiff a reasonable opportunity to cure any such deficiency.

83.

Defendants violated the FMLA by failing to return the Plaintiff to employment after taking FMLA leave.

84.

Defendants violated the FMLA by terminating the Plaintiff from employment.

85.

Defendants violated the FMLA by interfering with the Plaintiff's substantive rights to which he is entitled under the FMLA.

86.

Defendants' actions entitle the Plaintiff to all remedies, including, but not limited to, back pay, front pay, interest, liquidated damages, and equitable relief, pursuant to 29 U.S.C. § 2617(a).

**COUNT TWO:  FMLA RETALIATION – INTERFERENCE WITH RIGHTS**

87.

Plaintiff incorporates herein paragraphs 1 through 86 of his Complaint.

88.

Defendants retaliated against the Plaintiff because he exercised his rights under the FMLA, by failing to return the Plaintiff to an equivalent employment position, and terminating the Plaintiff from employment.

89.

Defendants' actions entitle the Plaintiff to all remedies, including, but not limited to, back pay, front pay, interest, liquidated damages, and equitable relief, pursuant to 29 U.S.C. § 2617(a).

**COUNT THREE: ADAAA - DISCRIMINATION**

90.

Plaintiff incorporates herein paragraphs 1 through 89 of his Complaint.

91.

The Plaintiff suffers from vestibular neuronitis disorder, a disability as defined by the ADAAA.

92.

Plaintiff has a record of a physical impairment that substantially limits one or more of his major life activities.

93.

Defendants regarded and/or perceived the Plaintiff as having a physical impairment that substantially limited one or more of his major life activities.

94.

The Plaintiff is a qualified individual as defined by the ADA.

-19-

95.

Defendants have engaged in discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, refusing to return him to work because of his disability and terminating him.

96.

The Plaintiff is capable of performing all essential functions of his position.

97.

The Plaintiff has a physical impairment that substantially limits one or more of his major life activities.

98.

Defendants' conduct violates 42 U.S.C. § 12101 <u>et</u> <u>seq</u>., the ADAAA, as amended.

99.

On or about March 21, 2022, the Plaintiff filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination.  (EEOC Charge of Discrimination #410-2022-03952, attached hereto as Exhibit A)

100.

The Plaintiff has satisfied all statutory prerequisites for filing this action.

101.

On or about September 18, 2022, the Plaintiff received his "Notice Of Right To Sue" letter from the EEOC for his Charge of Discrimination. (A true and accurate copy of the EEOC "Notice Of Right To Sue" letter for EEOC Charge #410-2022-03952 is attached hereto as Exhibit B)

102.

The Plaintiff has filed this action under the ADAAA within ninety (90) days after receipt of his "Notice Of Suit Rights" letter from the EEOC.

103.

Defendants' discriminatory conduct, in violation of the ADAAA, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

104.

Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages pursuant to 42 U.S.C. § 1981a.

105.

Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981a.

**COUNT FOUR: ADAAA - RETALIATION**

106.

Plaintiff incorporates herein paragraphs 1 through 105 of his Complaint.

107.

The Plaintiff requested leave as a reasonable accommodation under the ADAAA.

108.

A request for a reasonable accommodation is a statutorily protected activity under the ADAAA.

109.

In close proximity to the Plaintiff requesting leave as a reasonable accommodation under the ADAAA, Defendants refused to return the Plaintiff to work, and, instead, terminated him from employment.

110.

Defendants have engaged in retaliation in the terms and conditions of the Plaintiff's employment, including, but not limited to, refusing to return him to work, and terminating him.

111.

Defendants' conduct violates the ADAAA.

112.

On March 21, 2022, the Plaintiff filed a timely Charge of Discrimination alleging retaliation with the EEOC. (Plaintiff's Exhibit A)

113.

On or about September 18, 2022, the Plaintiff received his "Notice Of Right To Sue" letter from the EEOC for his Charge of Discrimination. (Plaintiff's Exhibit B)

114.

The Plaintiff has satisfied all statutory prerequisites for filing this action.

115.

The Plaintiff has filed this action under the ADAAA within ninety (90) days after receipt of his "Notice Of Right To Sue" letter from the EEOC.

116.

Defendants' retaliatory conduct in violation of the ADAAA has caused the Plaintiff to suffer a loss of pay, benefits, and prestige.

117.

Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages pursuant to 42 U.S.C. § 1981a.

118.

Defendants have engaged in retaliatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981a.

**PRAYER FOR RELIEF**

119.

Wherefore, Plaintiff prays for a judgment as follows:

1. That the Court order Defendants to reinstate his employment;

2. That the Court grant full front pay to the Plaintiff;

3. That the Court grant full back pay to the Plaintiff;

4. That the Court grant Plaintiff all employment benefits he would have enjoyed had he not been discriminated and retaliated against;

5. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

6. That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

7. That the Court grant Plaintiff liquidated damages under the FMLA;

8. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to the FMLA, ADAAA, and/or 42 U.S.C. § 1988;

9. That the Court grant Plaintiff a jury trial;

10. That the Court grant Plaintiff all other relief the Court deems just and proper; and

11. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct.

Respectfully submitted this <u>13th</u> day of December 2022.

**THE REDDY LAW FIRM, P.C.**

<u>/s/K. Prabhaker Reddy</u>
K. PRABHAKER REDDY
Attorney at Law
Georgia Bar No. 597320
1325 Satellite Boulevard
Suite 1506
Suwanee, Georgia 30024
Telephone: (678) 629-3246
Facsimile: (678) 629-3247
Email: kpr@reddylaw.net